1

2

3

4

5

6

7

8                      IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10    ESTHER T. RAEL,

11              Plaintiff,                    No. CIV S-08-1868 GGH[1]

12         vs.

13
      MICHAEL J. ASTRUE,                      FINDINGS AND RECOMMENDATIONS
14    Commissioner of
      Social Security,
15
                Defendant.
16    _____/

17              Plaintiff seeks judicial review of a final decision of the Commissioner of Social

18    Security ("Commissioner") denying her application for Supplemental Security Income ("SSI")

19    under Title XVI of the Social Security Act ("Act").  For the reasons that follow, the court

20    recommends that Plaintiff's Motion for Summary Judgment be granted in part, the

21    Commissioner's Cross Motion for Summary Judgment be denied, and this matter be remanded to

22    the ALJ for further findings as directed in this opinion.  The Clerk should be directed to enter

23    judgment for plaintiff.

24    \\\\\

25    _____

26         [1]  The Clerk of the Court is directed to assign a district judge to this case.

1  BACKGROUND

2          Plaintiff, born August 11, 1969, first applied on April 17, 1995 for disability

3  benefits.  Plaintiff alleged she was unable to work due to a heart murmur, severe migraine

4  headaches, ankle lesion, low back pain, and leg and arm pain.  (Tr. at 83, 88, 78, 79.)  In a

5  decision dated February 25, 1997, ALJ Jon R. Hunt determined that plaintiff was not disabled.

6  (Id. at 161-67.)  Upon review, the Appeals Council remanded the case and a second hearing was

7  held on July 15, 1999.  (Id. at 171, 274-285.)  The claim was again denied, and the Appeals

8  Council denied review.  (Id. at 285, 45-56.)

9          Plaintiff then filed another application for SSI on December 16, 2004 based on

10 fibromyalgia, back and right shoulder pain, and panic and anxiety.  (Id. at 35, 291.)  The SSI

11 application was initially denied on March 30, 2007, without review of additional records, but

12 then reopened two separate times based on administrative errors.  The second request for review

13 was denied on July 24, 2008.  (Id. at 35-42, 20, 13, 9.)  The March 30, 2007 decision of the ALJ

14 therefore constitutes the final decision of the Commissioner.  (Id. at 35-42.)  In this decision, ALJ

15 William C. Thompson, Jr. made the following findings:[2]

16 

17          [2] Disability Insurance Benefits are paid to disabled persons who have contributed to the
   Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income is paid to
18 disabled persons with low income. 42 U.S.C. § 1382 et seq.  Both provisions define disability, in
   part, as an "inability to engage in any substantial gainful activity" due to "a medically
19 determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).
   A parallel five-step sequential evaluation governs eligibility for benefits under both programs.
20 See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S.
   137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:
21          Step one:  Is the claimant engaging in substantial gainful
   activity?  If so, the claimant is found not disabled.  If not, proceed
22 to step two.
           Step two:  Does the claimant have a "severe" impairment?
23 If so, proceed to step three.  If not, then a finding of not disabled is
   appropriate.
24          Step three:  Does the claimant's impairment or combination
   of impairments meet or equal an impairment listed in 20 C.F.R., Pt.
25 404, Subpt. P, App.1?  If so, the claimant is automatically
   determined disabled.  If not, proceed to step four.
26          Step four:  Is the claimant capable of performing his past

2

1.    The claimant has not engaged in substantial gainful activity since April 17, 1995, the alleged onset date (20 CFR 416.920(b) and 416.971 *et seq.)*.

2.    The claimant has the following severe impairments: obesity and anxiety (20 CFR 416.920(c)).

3.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4.    After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light exertional work as defined in the <u>Dictionary of Occupational Titles</u> and the Social Security Regulations with little public contact.

5.    The claimant has no past relevant work (20 CFR 416.965).

6.    The claimant was born on August 11, 1969 and was 37 years old, which is defined as a "younger individual age 18-44, on the date the application was filed (20 CFR 416.963).

7.    The claimant has a "limited" education, is literate (Exhibit B1E, p. 1), and is able to communicate in English (20 CFR 416.964).

8.    Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.960(c) and 416.966).

10.   The claimant has not been under a disability, as defined in the Social Security Act, since December 16, 2004, the date

work?  If so, the claimant is not disabled.  If not, proceed to step five.

Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

<u>Lester v. Chater</u>, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  <u>Bowen</u>, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  <u>Id</u>.

1   the application was filed (20 CFR 416.920(g)).

2   (Tr. at 35-42.)

3   ISSUES PRESENTED

4   Plaintiff has raised the following issues: A.  Whether the ALJ's Credibility

5   Findings are not Supported by Substantial Evidence; B. Whether the ALJ's Implied Finding that

6   Plaintiff's Fibromyalgia and Back Pain are not Severe is not Based on Substantial Evidence; C.

7   Whether the ALJ Failed to Adequately Explain the Basis for the RFC; D.  Whether the ALJ

8   Failed to Provide Legitimate Reasons for Rejecting Dr. Gross' Opinion; and E.  Whether the ALJ

9   Erred in Failing to Admit the Updated Records Submitted on October 13, 2006 as Part of the

10  Record.

11  LEGAL STANDARDS

12  The court reviews the Commissioner's decision to determine whether (1) it is

13  based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in

14  the record as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999).

15  Substantial evidence is more than a mere scintilla, but less than a preponderance.  Connett v.

16  Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence

17  as a reasonable mind might accept as adequate to support a conclusion."  Orn v. Astrue, 495 F.3d

18  625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  "The ALJ

19  is responsible for determining credibility, resolving conflicts in medical testimony, and resolving

20  ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted).

21  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one

22  rational interpretation."  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

23  ANALYSIS

24  A.  Whether the ALJ Erred in Failing to Admit Updated Records

25  Plaintiff claims that the ALJ left the hearing open for submission of further

26  medical records which plaintiff timely submitted on October 13, 2006, but he apparently did not

4

consider them.  Plaintiff has filed these records in the case as they were not included in the

transcript submitted by the Commissioner, and requests that they be added to the record.  (Dkt. #

14.)

New evidence is "material," if the court finds a reasonable possibility that

considering the evidence would have changed the disability determination.[3]  See Booz v.

Secretary of Health and Human Services, 734 F.2d 1378, 1380-1381 (9th Cir. 1984).  Unless it is

probative of plaintiff's condition at or before the disability hearing, new evidence is not material.

See 42 U.S.C. § 416(i)(2)(G); Sanchez v. Secretary of Health and Human Services, 812 F.2d

509, 511-12 (9th Cir. 1987) (holding that new evidence was not material because it related to a

medical condition not significantly at issue at time of hearing).[4]

"Good cause" requires more than "simply . . . obtaining a more favorable report

from an expert witness once [a] claim is denied.  The claimant must establish good cause for not

seeking the expert's opinion prior to the denial. . . ."  Clem v. Sullivan, 894 F.2d 328, 332 (9th

Cir. 1990) (citing Key v. Heckler, 754 F.2d 1545, 1551 (9th Cir.1985)).  For example, good

cause exists if new evidence earlier was unavailable, in the sense that it could not have been

obtained earlier.  Embrey v. Bowen, 849 F.2d 418, 423-24 (9th Cir.1988).

The new records are dated between February 5, 1998 and July 14, 2006, and

include updated records of Drs. Malak and Barzaga, plaintiff's treating physicians, as well as

records from St. Joseph's Medical Center.  Plaintiff argues that the records are material because

they show that plaintiff has been treated regularly and aggressively, contrary to the ALJ's

findings that plaintiff was not credible in part due to the lack of treatment and lack of objective

findings.  Plaintiff also contends that this new evidence is relevant to whether plaintiff's

---

[3]  Evidence is not deemed immaterial solely by the date it was created.  Later dated evidence may have substantive impact on a preceding period.

[4]  When new evidence reflects plaintiff's current condition but is not probative of a condition at the time of the initial determination, the correct procedure is to reapply for benefits. See Ward v. Schweiker,  686 F.2d 762, 765-66 (9th Cir.1982).

1  fibromyalgia and back impairment are severe impairments, and explains limitations in her RFC

2  in combination with her other impairments.

3            Pursuant to 20 C.F.R. § 404.1512(d), the ALJ will make "every reasonable effort"

4  to obtain evidence from medical sources.  The record will be kept open after the hearing for

5  submission of post-hearing evidence known to be in existence.  1 Soc. Sec. Disab. Claims Prac.

6  & Proc. § 16:57 (2nd Ed.)  "Even if the ALJ does not hold a record open for submission of new

7  evidence, evidence can be submitted up to the date a hearing decision is issued."  Id.

8            In this case, the hearing occurred on September 5, 2006, and the ALJ agreed to

9  hold record open for submission of these records.  (Tr. at 467.)  On October 13, 2006, plaintiff

10  timely submitted the records of treating sources, all dated prior to the hearing.  The ALJ's

11  decision, issued March 30, 2007, fails to refer to these records.

12            As the records were in existence at the time of the hearing, they are probative of

13  plaintiff's condition at the pertinent time period.  The ALJ's failure to refer to them, however, is

14  not significant.  Contrary to plaintiff's argument, the new records reflect little if any treatment for

15  a back problem.  Rather, the records are either irrelevant to the conditions for which plaintiff

16  seeks disability, are cumulative or duplicative of previously submitted records, do not support

17  plaintiff's claims, (see discussion infra), or they pertain to her fibromyalgia, which had already

18  been acknowledged in the ALJ's decision.  This later submitted evidence merely indicates that

19  Drs. Malak and Barzaga confirmed their earlier diagnoses of fibromyalgia for another year after

20  the records previously submitted.

21            Although the ALJ may have erred in failing to make these records part of the file,

22  any error was harmless, and they now have been reviewed for this decision.  See  Curry v.

23  Sullivan, 925 F.2d 1127, 1121 (9th Cir. 1990) (an error which has no effect on the ultimate

24  decision is harmless).

25  \\\\\

26  \\\\\

6

B.  <u>Whether Fibromyalgia and Back Pain Constitute Severe Impairments at Step Two</u>

Plaintiff first contends that in considering plaintiff's impairments at step two, the ALJ erred in failing to find plaintiff's fibromyalgia and back pain to be severe impairments.

At the second step of the disability analysis, an impairment is not severe only if it "would have no more than a minimal effect on an individual's ability to work, even if the individual's age, education, or work experience were specifically considered." SSR 85-28.  The purpose of step two is to identify claimants whose medical impairment is so slight that it is unlikely they would be disabled even if age, education, and experience were taken into account. <u>Bowen v. Yuckert</u>, 482 U.S. 137, 107 S. Ct. 2287 (1987).  "The step-two inquiry is a de minimis screening device to dispose of groundless claims." <u>Smolen v. Chater,</u> 80 F.3d 1273, 1290 (9th Cir. 1996).  At this step, the ALJ may decline to find a severe impairment "*only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.*" <u>Webb v. Barnhart</u>, 433 F.3d 683, 686-87 (9th Cir. 2005) (emphasis in original).

The ALJ only found plaintiff's obesity and anxiety to be severe.  (Tr. at 37.)  The ALJ did analyze plaintiff's back pain and fibromyalgia and explained why they were given less consideration, but only did so at the later steps of the analysis.  Although he eventually and correctly found that plaintiff could do light work in spite of her various impairments, he was required to find the back pain and fibromyalgia to be severe impairments at step two if he was going to consider them at the later stages as the diagnoses in that the record reflects they were more than slight abnormalities.

First, the ALJ noted that Dr. Barzaga did diagnose fibromyalgia.  (<u>Id.</u> at 37.)  He also noted Dr. Barzaga's observation that although plaintiff complained of lower back pain, her lumbar spine exams were normal and she had full range of motion.[5]  (<u>Id.</u>)  The ALJ also referred to other visits with Dr. Barzaga wherein plaintiff was again diagnosed with fibromyalgia and

_____

[5] These diagnoses were made in May, 2003, a year and a half prior to plaintiff's December, 2004 application date.

7

1   noted several trigger areas in her low back.[6]  He did not, however, make a diagnosis in regard to

2   plaintiff's back at this time.[7]  An x-ray dated November 30, 2004, was noted by the ALJ,

3   indicating degenerative disk disease, calcification in a thoracic disk, and degenerative joint

4   disease of the bilateral sacroiliac joints.  (Id.)

5          The ALJ then proceeded to discuss Dr. Johl's consultative exam.  This internist

6   diagnosed back pain, specifically noting that it was subjective in nature, and that it could not be

7   confirmed by physical exam in terms of a particular etiology as there were no objective findings.

8   (Id. at 37-38.)  The ALJ characterized these findings and Dr. Johl's opinion that "it was possible

9   the claimant had fibromyalgia but opined this would not cause any severe limitations."  (Id. at

10  38.)  The ALJ fully summarized this opinion but in particular regarding plaintiff's back noted a

11  full range of motion, a negative straight leg raise, mild tenderness, and normal neurological

12  exam.  Dr. Johl concluded that plaintiff could lift and carry forty pounds frequently, and sit, stand

13  and walk without limitation.[8]  The ALJ acknowledged that this report allowed for plaintiff to do

14  light to medium work.  (Id.)  The ALJ also reported on plaintiff's most recent x-ray, dated May 1,

15  2006, which indicated degenerative changes of the L5-S1 disks and facets, and moderate to

16  moderately severe mild and upper SI joints.  (Id. at 39.)

17         This summary of plaintiff's back pain and fibromyalgia indicates that they should

18  have been found to be severe impairments, especially since he considered them at the later stages

19  of the sequential analysis.  Since step two is only a de minimis screening device, it is illogical for

20  the ALJ to have considered them later in his opinion without having found them to be severe

21  impairments.

22  \\\\\

23

24         [6]  (Id. at 394.)

25         [7]  (Id. at 395.)

26         [8]  (Id. at 383.)

1       The court has independently considered the record (and the newly submitted

2   evidence).  The ALJ's characterization of the effect of plaintiff's fibromyalgia and low back

3   problems on her functional capacity proved to be ultimately correct; however, the ALJ did not

4   meet the legal standard required at step two of the analysis, based on the medical record.

5       Dr. Barzaga diagnosed fibromyalgia just as the ALJ acknowledged.  He did not,

6   however, diagnose a back impairment but in fact noted that plaintiff had normal range of motion

7   and no paralumbar muscle spasm.  (Id. at 395.)  Dr. Johl was more doubtful about plaintiff's

8   fibromyalgia.  Although he thought that it was *possible* she had this diagnosis, he emphasized the

9   subjective nature of her complaints:

> DIAGNOSIS: Shoulder and back pain are subjective in nature.
> The claimant's allegation of symptoms in the shoulder, back and
> knees cannot be confirmed on physical examination in terms of any
> particular etiology.  There are no objective findings to suggest clear
> etiology of her symptoms.  It is possible that the claimant has
> fibromyalgia, but I do not believe that this would cause any severe
> limitations.

14   (Id. at 383.)

15       Plaintiff argues there is no indication that Dr. Johl tested plaintiff's trigger points.

16   Just as it should be assumed from Dr. Barzaga's diagnosis of fibromyalgia that he found at least

17   eleven trigger points, as plaintiff asserts, so also should it be assumed that Dr. Johl tested

18   plaintiff for trigger points but did not find the requisite number.  In fact, because Dr. Johl had Dr.

19   Barzaga's[9] 2003 report, he would have been on notice that fibromyalgia was a previously

20   diagnosed impairment that he should consider.  (Id. at 394-96.)  Plaintiff's complaint that this

21   consulting internist had no records for his review other than the one consultation report by Dr.

22   Barzaga, is not problematic.  Plaintiff relies most of all on Dr. Barzaga's report which diagnosed

23   fibromyalgia; it was timely; and it was authored by a treating rheumatologist.  It is not significant

24   \\\\\

25

26       [9]  Dr. Johl incorrectly refers to Dr. Barzaga as Dr. Varschea.

1   that Dr. Johl was lacking additional medical records.[10]

2        The Seventh Circuit has discussed the problems inherent in the diagnosis of

3   fibromyalgia:

4            Its cause or causes are unknown, there is no cure, and, of
         greatest importance to disability law, its symptoms are entirely
5        subjective. There are no laboratory tests for the presence or severity
         of fibromyalgia. The principal symptoms are 'pain all over,'
6        fatigue, disturbed sleep, stiffness, and the only symptom that
         discriminates between it and other diseases of a rheumatic
7        character-multiple tender spots, more precisely 18 fixed locations
         on the body (and the rule of thumb is that the patient must have at
8        least 11 of them to be diagnosed as having fibromyalgia) that when
         pressed firmly cause the patient to flinch. All these symptoms are
9        easy to fake, although few applicants for disability benefits may yet
         be aware of the specific locations that if palpated will cause the
10       patient who really has fibromyalgia to flinch.

11   Sarchet v. Chater, 78 F.3d 305, 306-07 (7th Cir. 1996).

12        In regard to the back, Dr. Johl's exam revealed that plaintiff was able to ambulate

13   with no problem from the waiting room to the examining room, and had no trouble getting on

14   and off the examining table or removing her shoes.  (Id. at 381.)  Her range of motion in the back

15   was normal, despite some tenderness in the back.  (Id. at 382.)   He concluded that plaintiff could

16   work without any limitations except that she was limited to lifting and carrying up to 40 pounds.

17   (Id. at 383.)

18        It is true that Dr. Barzaga's report, obtained by Dr. Johl, did not include diagnostic

19   studies of the back or other medical history.  Nevertheless, review of the x-rays and MRIs on file,

20   indicate that this problem would constitute a severe impairment.  An x-ray of the lumbar spine in

21   November, 2004, indicated degenerative disk disease at L5-S1, and degenerative joint disease of

22   the bilateral sacroiliac joints.  (Id. at 443.)

23

24        [10]  Plaintiff makes the argument that she has undergone various types of treatment for
     intense pain due to her fibromyalgia, including physical therapy, cortisone shots, medication and
25   a TENS unit, but has experienced no relief.  Pl.'s Mot. at 17.  The page reference provided in
     support discusses plaintiff's shoulder pain and that the possible cause is the cervical spine.  (Id. at
26   155.)  Fibromyalgia is not mentioned there.

1     Plaintiff complains that Dr. Johl did not review plaintiff's most recent x-rays from

2 2006 which indicated degenerative changes at L5-S1; however, that x-ray was not in existence

3 when Dr. Johl evaluated plaintiff in 2005.  As the most recent report on the spine, it reported

4 moderate to moderately severe degenerative changes at L5-S1 and in the mid and upper SI joints.

5 Disc heights were well preserved.  (Id. at 442.)  Degenerative changes are part of the natural

6 aging process.  www.Back.com.  Degenerative changes do not always cause pain.  In fact, many

7 people who have no pain will have MRIs indicating degenerative changes.  Id. The ALJ did

8 consider both of these x-rays, as mentioned above.  The ALJ was correct in his analysis at the

9 later stages.  Nevertheless, the fact that he considered and analyzed plaintiff's back impairment

10 confirms that he should have found this impairment to be severe at step two.

11     The new evidence submitted by plaintiff, as discussed in the previous section, is

12 not significant.  There are records concerning fibromyalgia but they only confirm the earlier

13 records as discussed by the ALJ.  There  was a dearth of new records concerning plaintiff's back

14 problem.

15     In sum, the evidence regarding plaintiff's back pain is dubious, but passes the very

16 limited threshold for severe impairments.  But, because the ALJ considered these impairments at

17 later stages, and because there does not appear to have been any harm *per se* caused by their

18 omission at the Step 2 of the sequential analysis, the undersigned would not remand the case for

19 the alleged error committed here.  Nevertheless, because the case is remanded for other reasons,

20 this technical error can be corrected on remand.

21     C.  The ALJ's Credibility Findings

22     Plaintiff next claims that the ALJ erred in several respects, notably by making

23 general findings only, and by not following the Cotton pain test.

24     The ALJ determines whether a disability applicant is credible, and the court defers

25 to the ALJ who used the proper process and provided proper reasons.  See, e.g., Saelee v. Chater,

26 94 F.3d 520, 522 (9th Cir. 1995).  If credibility is critical, the ALJ must make an explicit

11

credibility finding.  Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

          In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors.  Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. July 8, 2009);  Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir.1991) (en banc).  The ALJ may not find subjective complaints incredible solely because objective medical evidence does not quantify them.  Bunnell at 345-46.  If the record contains objective medical evidence of an impairment reasonably expected to cause pain, the ALJ then considers the nature of the alleged symptoms, including aggravating factors, medication, treatment, and functional restrictions.  See Vasquez, 572 F.3d at 591.  The ALJ also may consider the applicant's: (1) reputation for truthfulness or prior inconsistent statements; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) daily activities.[11]  Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13.  Work records, physician and third party testimony about nature, severity, and effect of symptoms, and inconsistencies between testimony and conduct, may also be relevant.  Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997).  The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis. Marcia v. Sullivan, 900 F.2d 172, 177, n.6 (9th Cir. 1990).  Plaintiff is required to show only that her impairment "could reasonably have caused some degree of the symptom."  Vasquez, 572 F.3d at 591, quoting Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007), Smolen, 80 F.3d

---

[11]  Daily activities which consume a substantial part of an applicants day are relevant. "This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability.  One does not need to be utterly incapacitated in order to be disabled."  Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) (quotation and citation omitted).

1   at 1282.  Absent affirmative evidence demonstrating malingering, the reasons for rejecting

2   applicant testimony must be specific, clear and convincing.  Vasquez, 572 F.3d at 591.

3          Plaintiff's citation to Vasquez v. Astrue, 547 F.3d 1101 (9th Cir. 2008),

4   *superseded only to amend dissent*, Vasquez v. Astrue, 572 F.3d 586 (9th Cir. 2009), is on point.

5   There, the court found error in the ALJ's credibility analysis which was vague, generalized, and

6   contained no specific findings.  There, the ALJ had stated only that plaintiff's allegations were

7   not well supported by the evidence, inconsistent with the objective medical evidence, and

8   generally inconsistent with the limitations found.  Here too, the ALJ rendered the following

9   general analysis with no specific findings:

> The claimant testified to an inability to work due to diffuse pain
> (particularly in the shoulder and low back); panic attacks and
> difficulty being around people.  She testified she was able to walk
> for only 30 minutes, stand for only 30 minutes and sit for only 30
> minutes.  The objective medical findings and the level of
> treatment, however, are not suggestive of this level of severity.  In
> the absence of objective medical evidence to support these
> allegations, the ALJ gives minimal weight to this testimony.[12]

15  (Id. at 40.)

16         These findings are just as cursory and conclusory as those found in Vasquez.  The

17  ALJ failed to discuss plaintiff's medication, treatment, daily activities, any failure to seek or

18  follow prescribed treatment, any prior inconsistent statements by plaintiff, any practitioner's

19  opinion regarding inconsistencies between plaintiff's subjective complaints and her conduct.

20         Although there are a few indications in the record that plaintiff's credibility might

21  be questioned, the ALJ did not analyze them.  For example, Dr. Johl could not confirm plaintiff's

22  subjective complaints on physical examination, and found there were no objective findings to

23  \\\\\

---

[12]  In her reply, plaintiff attempts to rebut defendant's assertion that because no
practitioner has found that plaintiff cannot work, her credibility is diminished.  She cites to Dr.
Malak's opinion that plaintiff is unable to work.  (Pl.'s Reply at 3, tr. at 169.)  This report is
dated April 2, 1997, however, long before the time period at issue here.  (Id.)

1  suggest a clear etiology for her symptoms.[13]  (Id. at 387.)  Additionally, the newly submitted

2  evidence contains a practitioner's note on January 4, 2000, which states: "wants permanent

3  disability.  I told her Neuro & Rheum have not recommended that - she wants opinion from

4  another neuro." (Dkt. #14 at 21.)  Further, Dr. Soliman thought plaintiff's answers to the mental

5  status exam were "not so reliable."  (Id. at 378.)  He explained that plaintiff's description of her

6  panic attacks did not fit the classic definition.  For example, plaintiff had complained to this

7  psychiatrist that she had three panic attacks per week, but only in the afternoons while sitting at

8  home with her daughter.  (Id. at 375.)  Of course, this court cannot make a credibility analysis

9  for the ALJ.  He must make this determination himself based on the entire record.

10        The court finds that the ALJ's credibility findings are substantially lacking and

11  remand is required for a proper analysis.

12     D.  Lay Testimony

13        Plaintiff raises for the first time in her reply the issue of lay testimony, that the

14  ALJ erred in failing to discuss a third party report by plaintiff's daughter.  (Tr. at 348-56.)  Issues

15  raised for the first time in a reply brief will not be considered.  Socop-Gonzalez v. I.N.S., 272

16  F.3d 1176, 1185 (9th Cir. 2001).  The Commissioner has had no opportunity to respond to this

17  contention.

18        However, since this case is being remanded on other grounds, the ALJ is directed

19  to analyze the third party report by plaintiff's daughter, as raised in plaintiff's reply, under the

20  following standards.

21        With regard to third party statements, an ALJ is required to "consider observations

22  by non-medical sources as to how an impairment affects a claimant's ability to work."  Sprague

23  v. Bowen, 812 F.2d 1226, 1232 (9th Cir.1987).  "Lay testimony as to a claimant's symptoms is

24

25     [13]  Plaintiff points out her additional treatment in the way of physical therapy, chiropractic
   care, injections and a TENS unit, all of which did not relieve her pain.  Pl.'s Reply at 3.  Those
   treatments were directed to her shoulder, however, which was not found to be a severe

26  impairment.  (Id. at 155, 211.)

competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir.2001).  Similar to the ALJ's role in evaluating the testimony of a claimant, when evaluating the testimony of a lay witness "[t]he ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Sousa v. Callahan, 143 F.3d 1240, 1243 (9th Cir.1998).

The Ninth Circuit has held that the ALJ must properly discuss lay witness testimony, and that any failure to do so is not harmless unless no reasonable ALJ, when fully crediting the testimony, could have come to a different disability determination.  Stout v. Commissioner, 454 F.3d 1050, 1056 (9th Cir. 2006).

E.   Residual Functional Capacity

Plaintiff contends that the ALJ's discussion of plaintiff's RFC was conclusory and contained several inconsistencies.  This issue may need to be re-analyzed by the ALJ at a later time after the previously discussed issues are considered on remand.  The undersigned will analyze RFC based on the current record.

Social Security Ruling 96-8p sets forth the policy interpretation of the Commissioner for assessing residual functional capacity.  SSR 96-8p.  Residual functional capacity is what a person "can still do despite [the individual's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current "physical and mental capabilities").

The ALJ found in this regard that plaintiff could do light work with little public contact.  (Tr. at 39.)  In so doing, the ALJ gave "substantial weight to the consultative examiners and the State agency medical consultants which allow for light, simple, repetitive tasks (Exhibits B2F, B4F)."  (Id.)

Plaintiff first takes issue with the ALJ's reference to Exhibits B2F and B4F without explaining on which reports he was relying.  See Tr. at 39.  Exhibit 2F contains the

15

reports of both Drs. Soliman and Johl.  A review of this exhibit indicates that the ALJ relied on Dr. Soliman as he was the practitioner who found that plaintiff could do simple and repetitive tasks and would be able to work on a consistent basis without interruption from her anxiety disorder.  (Id. at 378.)  Clearly, the ALJ did not rely on all Dr. Johl's assessments as this physician had found that plaintiff had no work limitations other than being restricted to lifting 40 pounds frequently, which amounts to medium work.  20 C.F.R. § 404.1567(c).  An ALJ may properly rely upon only selected portions of a medical opinion while rejecting other parts.  See, e.g., Magallanes v. Bowen, 881 F.2d 747, 753 (9th Cir. 1989) (ALJ's supported reliance on selected portions of conflicting opinion constitutes substantial evidence).  However, such selective reliance must be consistent with the medical record as a whole.  See, e.g., Edlund v. Massanari, 253 F.3d 1152, 1159 (9th Cir. 2001) (ALJ cannot reject portion of medical report that is clearly reliable).

The ALJ also referred to Exhibit B4F, the mental RFC assessment by Dr. Gross, as one of the bases for his RFC finding.  Any lack of clarity in regard to this exhibit is easily explained due to typographical errors.  The ALJ first explained that he was giving slight weight to the moderate restrictions in Dr. Gross' Mental Residual Functional Capacity Assessment, dated May 27, 2005, because they were inconsistent both with Dr. Gross' other opinions in Exhibit B5F, and Dr. Soliman's opinion.  (Tr. at 38.)  The ALJ went on to analyze Dr. Gross' Psychiatric Review Technique Form, also dated May 27, 2005.  This is the form relied upon by the ALJ as found in Exhibit B5F, but the ALJ mistakenly cited B4F when describing it.  (Id. at 29, first full para.)  When the ALJ finally concluded by stating that he placed substantial weight on the consultative examiners and state agency medical consultant, and found plaintiff could do work involving light, simple, repetitive tasks, he mistakenly referred to Exhibit B4F instead of B5F.  (Id. at 39.)  Dr. Gross' PRT form states that plaintiff has no difficulties in maintaining social functioning, no episodes of decompensation, mild restriction in activities of daily living, and moderate difficulties in maintaining concentration, persistence, or pace.  (Id. at 411.)  He

1   found that plaintiff could do unskilled work.  (Id. at 401.)  These findings are consistent with the

2   the ALJ's finding that plaintiff could do light, simple repetitive tasks.  See SSR 85-15 (unskilled

3   jobs ordinarily involve dealing primarily with objects, rather than with data or people, and

4   involve little or no judgment to perform simple duties that can be learned on the job in a short

5   period of time).  Dr. Gross' findings in Exhibit B5F are also consistent with Dr. Soliman's

6   findings in Exhibit B2F that plaintiff could do simple and repetitive tasks.  (Id. at 378.)   The ALJ

7   was not required to specifically limit plaintiff to simple repetitive tasks since unskilled work

8   already encompasses these limitations.  In any event, the ALJ's hypothetical to the expert did

9   limit plaintiff to "simple instructions," among other limitations.  (Id. at 481.)  Furthermore, the

10   jobs of assembler and sewing operators are classified as unskilled or requiring less than a month

11   of specific vocational preparation, and are light work.  (Id. at 481; DICOT 787.685-010).[14]

12          Plaintiff contends that the hypothetical to the expert was substantially different

13   than the RFC he relied upon in his decision.  The ALJ's hypothetical to the expert limited

14   plaintiff to lifting 40 pounds occasionally and 20 pounds frequently, occasionally stooping

15   bending, twisting, squatting, kneeling, crawling and climbing, no work at heights or around

16   hazardous machinery, doing work involving simple instructions and having restricted contact

17   with the public.  (Id. at 481.)  His decision limited plaintiff to light work involving light, simple,

18   repetitive tasks, and little public contact.  (Id. at 39.)  These RFC limitations are not significantly

19   different.  If anything, the hypothetical was not as restrictive as the RFC relied upon by the ALJ,

20   especially in limiting the weight plaintiff could lift and carry.  See 20 C.F.R. § 404.1567(b).

21   Furthermore, as both jobs identified by the vocational consultant also fit the RFC later used by

22   \\\\\

23   \\\\\

24

25          [14]  The DOT code for assembler stated by the vocational expert was 813.684-022;
    however, this code is listed in the DICOT as solderer.  There are numerous other listings for
26   assembler, however.  See e.g. 692.685-118 (light bulb assembler, categorized as light work).

1   the ALJ in his decision, there was no error.[15]  The ALJ's later RFC assessment is supported by

2   the evidence in the record.

3          Plaintiff also questions the ALJ's limitation of little public contact as the ALJ did

4   not appear to rely on the evidence which imposed a similar limitation.  The practitioners upon

5   whom the ALJ relied did diagnose anxiety for which limited public contact reflects this

6   impairment.  (Id. at 388, 378, 401.)

7          Additionally, the fact that non-examining DDS consultant Dr. Clancy did not

8   complete a form is not significant as examining physician Dr. Johl found plaintiff could work

9   without limitations other than not lifting more than 40 pounds.  (Id. at 387.)  The ALJ was

10  entitled to rely in part on this consultant's report in regard to plaintiff's physical RFC, and in fact

11  limited plaintiff's functional capacity more severely than did Dr. Johl, to plaintiff's benefit.  In

12  this case, the ALJ was permitted to rely on a portion of Dr. Johl's report, and the ALJ's RFC

13  assessment was consistent with the record as a whole.

14         Plaintiff claims that the ALJ failed to consider obesity in regard to plaintiff's

15  RFC.  While obesity is no longer a ground for disability in a listing, it should be analyzed at the

16  various steps of the sequential analysis as it affects other maladies.  However, while at the

17  administrative level, the disability finding process is non-adversarial, Reed v. Massanari, 270

18  F.3d 838, 841 (9th Cir. 2001), such is not the case at the district court level.  Medical personnel

19  did take obesity into account in determining the residual functional capacity of plaintiff.  Dr.

20  Johl, despite noting plaintiff's height of five feet five inches and weight of 199 pounds, noted

21  that she could walk the hall at his office, get on and off the examining table, and take off her

22  shoes, all with no difficulty.  (Id. at 381.)  Furthermore, light work as an assembler or sewing

23  operator is not the type of work that would be precluded by obesity.

24  \\\\\

25

26         [15]  Both jobs do not require more than occasional postural activity and therefore also met
    both the hypothetical requirements and the ALJ's stated RFC.

18

1        This conclusion is based on the current record.  It might change if development of

2   the issues of plaintiff's severe impairments, credibility, and/or lay statement on remand require a

3   different conclusion on re-examination.

4        F.  The ALJ's Rejection in Part of Dr. Gross' Opinion

5        Plaintiff contends that the ALJ failed to give legitimate reasons for giving only

6   slight weight to the mental residual functional capacity assessment completed by DDS physician

7   Dr. Gross.

8        The weight given to medical opinions depends in part on whether they are

9   proffered by treating, examining, or non-examining professionals.  Holohan v. Massanari, 246

10  F.3d 1195, 1201 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).[16]

11       "The Commissioner may reject the opinion of a nonexamining physician by

12  reference to specific evidence in the medical record." Sousa v. Callahan, 143 F.3d 1240, 1244

13  (9th Cir.1998). Although the ALJ is "not bound by findings made by State agency or other

14  program physicians and psychologists, [he] may not ignore these opinions and must explain the

15  weight given to the opinions in [his] decision[]." S.S.R. 96-6p, 1996 WL 374180, *2.  Pursuant

16  to 20 C.F.R. § 416.927(f)(2) (i), "State agency medical and psychological consultants and other

17  program physicians and psychologists are highly qualified physicians and psychologists who are

18  also experts in Social Security disability evaluation. Therefore, administrative law judges must

19  consider findings of State agency medical and psychological consultants or other program

20  physicians or psychologists as opinion evidence...." "An ALJ is required to consider as opinion

21  evidence the findings of state agency medical consultants; the ALJ is also required to explain in

22

23       [16]  The regulations differentiate between opinions from "acceptable medical sources" and
    "other sources."  See 20 C.F.R. §§ 404.1513 (a),(e); 416.913 (a), (e).  For example, licensed
24  psychologists are considered "acceptable medical sources," and social workers are considered
    "other sources."  Id.  Medical opinions from "acceptable medical sources," have the same status
25  when assessing weight.  See 20 C.F.R. §§ 404.1527 (a)(2), (d); 416.927 (a)(2), (d).  No specific
    regulations exist  for weighing opinions from "other sources."  Opinions from "other sources"
26  accordingly are given less weight than opinions from "acceptable medical sources."

his decision the weight given to such opinions."   Sawyer v. Astrue, 303 Fed. Appx. 453, 455 (9th Cir.2008).

In this case, the ALJ gave slight weight to the restrictions in the mental RFC report (Ex. B4F) of DDS non-examining physician Gross because it was inconsistent with his opinions in the psychiatric review technique form (Ex. B5F), inconsistent with Dr. Soliman's opinion, a physician who had actually examined plaintiff, and because the record did not support a mental impairment likely to require this degree of limitation.  (Tr. at 38.)

Both of these reports were written on the same day, May 27, 2005, by the same physician, Dr. Gross.  Plaintiff is correct that the PRT form stated that an RFC assessment was necessary with the word "unskilled" next to it.  (Id. at 401.)  This form noted anxiety disorder, and found mild restriction in activities of daily living and moderate difficulties in concentration, persistence and pace.  (Id. at 401, 411.)

The mental RFC form, completed the same date by Dr. Gross, noted moderate limitations in carrying out detailed instructions, maintaining a regular schedule, completing a normal work week at a consistent pace, maintaining socially appropriate behavior, responding to changes in the work setting, and setting realistic goals.  (Tr. at 397-398.)

Plaintiff is correct that these two reports make very similar findings and are similar to Dr. Soliman's report after examination.  It is therefore unclear exactly why the ALJ distinguished them.  These non-distinctions are without a difference, however, as Dr. Gross' findings were substantially similar to those of Dr. Soliman, whose report was based on an exam. The ALJ properly relied on Dr. Soliman's opinion, and the fact that it was consistent with one or both of Dr. Gross' non-examining reports, is of no consequence.  In other words, the ALJ cannot be faulted for giving less weight to a report that he essentially agreed with because it was basically consistent with the reports he did rely on.  All of these reports support the ALJ's finding of light unskilled work involving light, simple, repetitive tasks and little public contact.

\\\\\

1  CONCLUSION

2          For the reasons stated herein, IT IS RECOMMENDED that: Plaintiff's Motion for

3  Summary Judgment be granted in part pursuant to Sentence Four of 42 U.S.C. § 405(g), the

4  Commissioner's Cross-Motion for Summary Judgment be denied, this matter be remanded for

5  further findings in accordance with this order, and the Clerk be directed to enter Judgment for

6  plaintiff.

7          These findings and recommendations are submitted to the United States District

8  Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within

9  fourteen (14) days after being served with these findings and recommendations, any party may

10  file written objections with the court and serve a copy on all parties.  Such a document should be

11  captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the

12  objections shall be served and filed within seven (7) days after service of the objections.  The

13  parties are advised that failure to file objections within the specified time may waive the right to

14  appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

15          IT IS ORDERED that: the Clerk of the Court is directed to assign a district judge

16  to this case.

17  DATED: 03/02/2010                                    /s/ Gregory G. Hollows

18                                                      _____
                                                        GREGORY G. HOLLOWS
                                                        U.S. MAGISTRATE JUDGE
19  GGH/076
    Rael1868.ss.wpd

20

21

22

23

24

25

26